CLOSED

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

TYLER FRANK,

        Plaintiff,

v.

        Case No. 05-74903
        Hon. Gerald E. Rosen

UNIVERSITY OF TOLEDO,

        Defendant.

_____/



FILED
JUN 0 2 2006
CLERK'S OFFICE
U.S. DISTRICT COURT
EASTERN MICHIGAN

## OPINION AND ORDER REGARDING DEFENDANT'S MOTION TO DISMISS

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on _____

        JUN 0 2 2006

PRESENT:  Honorable Gerald E. Rosen
                United States District Judge

## I. INTRODUCTION

Plaintiff Tyler Frank commenced this action in this Court on December 28, 2005,

alleging that the Defendant University of Toledo improperly removed him from its

doctoral program, violated his right to privacy by disclosing information about his status

in this program to his employer, discriminated against him on the basis of a disability, and

retaliated against him for having filed a charge of discrimination with the Ohio Civil

Rights Commission. While Plaintiff's initial complaint makes passing reference to two

federal statutes, it does not explicitly assert any claims arising under federal law. In

addition, and somewhat confusingly, the complaint alleges that the Court's subject matter

jurisdiction is "based upon diversity of citizenship pursuant to 28 USC [§] 1332," but that the Court "has pendent jurisdiction over Plaintiff's state law claims." (Complaint at ¶ 3.)

In lieu of answering the complaint, Defendant has filed a January 25, 2006 motion seeking dismissal on a number of grounds. First, Defendant asserts that it is a state university in the State of Ohio, and that, as an instrumentality of the State, it is not a "citizen" for purposes of federal court diversity jurisdiction. Defendant further contends that it enjoys Eleventh Amendment immunity as an instrumentality of the State of Ohio. Next, to the extent that Plaintiff cites federal statutes in support of his claim that his privacy rights were violated, Defendant argues that he has failed to state a viable federal claim under either of these two statutes. Finally, Defendant contends that venue is not proper in this judicial district, where the university does not "reside" in Michigan, and where most or all of the events cited in the complaint did not occur in this district.

On February 15, 2006, Plaintiff filed a response in opposition to Defendant's motion, arguing that the Court has subject matter jurisdiction and that venue is proper in this district. In addition, Plaintiff has filed an amended complaint in which he has explicitly asserted federal claims of disability discrimination and retaliation under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* In Plaintiff's view, this amended complaint defeats at least some of the arguments advanced in Defendant's motion. Defendant maintains otherwise, however, arguing in a February 21, 2006 reply brief that the Court still lacks subject matter jurisdiction, that Defendant remains immune

2

from suit under the Eleventh Amendment, and that venue remains improper in this district.

Having reviewed the parties' submissions and the record as a whole, the Court finds that the relevant allegations and legal arguments are adequately presented in the written record, and that oral argument would not significantly aid the decisional process. Accordingly, the Court will decide Defendant's motion "on the briefs." See Local Rule 7.1(e)(2), U.S. District Court, Eastern District of Michigan.  This opinion and order sets forth the Court's rulings on this motion.

## II.  FACTUAL BACKGROUND

For present purposes, the record is limited to Plaintiff's initial and amended complaints.  According to these pleadings, Plaintiff enrolled in Defendant's Manufacturing Management and Engineering doctoral program in January of 1998.  By March of 2001, he had completed the requirements of this program, with the exception of a comprehensive examination and a dissertation.

Plaintiff took the comprehensive examination in April of 2001.  Because of a disability that limits his ability to sit and write for extended periods without experiencing severe pain, Plaintiff requested that Defendant provide reasonable accommodations that would assist him in taking this examination, but Defendant refused.  As a result of this refusal, as well as "an unfair and arbitrary grading process," (First Amended Complaint at ¶ 15), Plaintiff did not pass this examination.  Plaintiff was scheduled to re-take this

examination in May of 2002 and in January of 2003, but did not do so after Defendant

again refused his requests for reasonable accommodations of his disability.

In response to Defendant's repeated refusals to provide reasonable

accommodations, Plaintiff filed a number of internal complaints within the Defendant

university, as well as a charge of discrimination with the Ohio Civil Rights Commission.

As the latter agency was investigating this charge, Defendant removed Plaintiff from its

doctoral program.  In addition, Defendant released information about Plaintiff's status in

this program and progress toward his degree to Plaintiff's employer, Northern Michigan

University.  As a result, Plaintiff's employment was terminated.

Based on these allegations, Plaintiff now is pursuing five theories of recovery

against Defendant.  First, Plaintiff alleges that Defendant breached a contractual

agreement between the parties by removing him from the university's doctoral program

and disclosing information about his status in this program to his employer.  These same

allegations also give rise to Plaintiff's claims of promissory estoppel and violation of

privacy rights.  Plaintiff further alleges that Defendant discriminated against him on

account of his disability, in apparent violation of state and federal law.[1]  Finally, Plaintiff

alleges that Defendant unlawfully retaliated against him for filing a charge of

discrimination with the Ohio Civil Rights Commission.

---

[1]Plaintiff's first amended complaint includes two counts of disability discrimination.
Count V explicitly rests upon Title II of the ADA, while Count IV cites only unspecified
"applicable statutes" that protect persons with disabilities against unlawful discrimination.
Presumably, then, Count IV is meant to assert a claim under state law.

4

# III. <u>ANALYSIS</u>

## A.      The Standards Governing Defendant's Motion

In its present motion, Defendant argues that the Court lacks subject matter jurisdiction over this action, <u>see</u> Fed. R. Civ. P. 12(b)(1), that Plaintiff has failed to state a viable federal claim that his privacy rights have been violated, <u>see</u> Fed. R. Civ. P. 12(b)(6), and that venue is improper in this judicial district, <u>see</u> Fed. R. Civ. P. 12(b)(3). As discussed below, the Court deems it necessary to resolve only the last of these three issues.

"When a defendant raises a venue challenge, the plaintiff has the burden of proving that venue is proper" in his chosen judicial district. <u>Steelcase, Inc. v. Mar-Mol Co.</u>, 210 F. Supp.2d 920, 936 (W.D. Mich. 2002). In determining whether this burden has been met here, the Court will view the limited record in a light most favorable to Plaintiff, and will accept Plaintiff's allegations as true.

## B.      Venue Is Not Proper in This District.

Although Defendant's motion raises a threshold question as to this Court's subject matter jurisdiction, this challenge rests in significant part upon ambiguities in Plaintiff's initial complaint regarding (i) the claimed basis for the Court's subject matter jurisdiction and (ii) the federal or state-law nature of the claims Plaintiff was advancing. Plaintiff has sought to address these concerns in his first amended complaint, in which he (i) expressly alleges that this action lies within the Court's federal question jurisdiction, and (ii)

5

explicitly advances claims of disability discrimination and retaliation under the federal

ADA. While this amended pleading does not necessarily foreclose each and every

jurisdictional challenge advanced by Defendant, the Court nonetheless deems it

appropriate to address the obvious defects in Plaintiff's allegations regarding venue in

this judicial district, and to allow any remaining jurisdictional issues to be addressed in

the transferee court under a more complete record and more thorough briefing by the

parties.[2]

---

[2]The most significant jurisdictional dispute that remains between the parties concerns the extent to which the Eleventh Amendment bars suits against states for money damages arising from alleged violations of Title II of the ADA. The Supreme Court recently held that Title II "validly abrogates state sovereign immunity" to the extent that a claim for damages rests upon "conduct that *actually* violates the Fourteenth Amendment." United States v. Georgia, 126 S. Ct. 877, 882 (2006). Beyond this, however, the Court left it to the lower courts to determine, in the first instance, whether Congress also validly abrogated state sovereign immunity as to conduct that violates Title II but not the Fourteenth Amendment. Georgia, 126 S. Ct. at 882.

In this case, Plaintiff has asserted a claim under Title II of the ADA that seemingly implicates the precise issue left open in Georgia. To resolve this issue would entail a more searching inquiry into the exact nature of Defendant's alleged failures to accommodate Plaintiff's claimed disability, in order to ascertain whether Defendant's alleged conduct could be viewed as violating the Fourteenth Amendment. In the absence of such a Fourteenth Amendment violation, it would be necessary to determine whether Congress exceeded its authority by purporting to abrogate state sovereign immunity as to conduct that violates Title II but not the Constitution. Finally, the relevance of this Eleventh Amendment inquiry turns upon the validity of Defendant's assertion in its motion that it is entitled to sovereign immunity as an arm of the State of Ohio. While Defendant states in a conclusory fashion that its entitlement to such immunity derives solely from its status as a state university, it appears to the Court that this question turns upon a variety of factors that Defendant has failed to address in its motion. See Long v. Richardson, 525 F.2d 74, 77 (6th Cir. 1975) (observing that "[e]ach state university exists in a unique governmental context, and each must be considered on the basis of its own peculiar circumstances" in determining whether it enjoys Eleventh Amendment immunity); see also Ernst v. Rising, 427 F.3d 351, 359 (6th Cir. 2005) (citing a variety of factors that govern the Sixth Circuit's "arm of the state" inquiry).

The Court is reluctant to tackle these potentially difficult issues under the limited record

The venue determination in this case is governed by 28 U.S.C. § 1391(b),[3] which provides in pertinent part that the present suit may be "brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, [or] (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred."[4]  Defendant plainly does not "reside" in this district; instead, this institution is located in the Northern District of Ohio, Western Division.  Thus, venue is proper here only if "a substantial part of the events or omissions giving rise to the claim occurred" in this district.

Yet, the complaint is utterly devoid of allegations as to *any* relevant events or omissions, much less a "substantial" portion, that might have occurred in this district.  To the extent that Plaintiff alleges that Defendant engaged in unlawful discrimination or retaliation in denying him reasonable accommodations and dismissing him from the

---

before it, particularly where the parties themselves have touched upon these matters only briefly, if at all.  In any event, it does not appear that Defendant's appeal to sovereign immunity, if successful, would necessarily deprive the federal courts of subject matter jurisdiction over this case, where at least some of Plaintiff's federal claims seemingly would survive such a challenge. Accordingly, the Court elects to address only the question of venue, leaving any other matters for resolution by the transferee court as it deems necessary and appropriate.

[3]Although Plaintiff cites § 1391(a) in his response to Defendant's motion, this subsection governs only in cases "wherein jurisdiction is founded only on diversity of citizenship."  28 U.S.C. § 1391(a).  Having disclaimed his initial reliance on diversity jurisdiction and instead argued that he has asserted federal claims, Plaintiff cannot avoid the application of § 1391(b) here.  In any event, the pertinent terms of the two subsections are essentially identical.

[4]The statute also includes a "catchall" provision that applies in the event that "there is no district in which the action may otherwise be brought" under subsections (b)(1) or (b)(2).  28 U.S.C. § 1391(b)(3).  This "catchall" provision does not apply here, however, where venue clearly would be proper in the Northern District of Ohio under subsection (b)(1).

university's doctoral program, such unlawful conduct surely must have occurred on Defendant's campus in Ohio, and not in this district. Plaintiff does not contend otherwise in his response to Defendant's motion, but asserts only that he "learned of" this conduct in Michigan, where he allegedly resided "throughout his schooling at the Defendant University." (Plaintiff's Response at 13.) Plaintiff has not cited any authority for the proposition that venue is proper in a district where a party "learns of" the conduct that gives rise to a claim.

Nor is it enough, standing alone, that the effects of Defendant's alleged violations were felt by Plaintiff at his Michigan residence. "The requirement of 'substantiality' is to prevent the unfairness of a defendant being haled into a remote district having no real relationship to the dispute." Overland, Inc. v. Taylor, 79 F. Supp.2d 809, 811 (E.D. Mich. 2000) (internal quotation marks and citations omitted). Accordingly, in "referring to 'events or omissions giving rise to the claim,' Congress meant to require courts to focus on relevant activities of the defendant, not of the plaintiff." Woodke v. Dahm, 70 F.3d 983, 985 (8th Cir. 1995). "[I]f Congress had wanted to lay venue where the plaintiff was residing when he was injured, it could have said so expressly." Woodke, 70 F.3d at 985. Instead, the statute lays venue in those districts in which "a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). Nothing in Plaintiff's complaint overcomes the common-sense presumption that the Defendant university acted primarily, if not solely, within the four corners of its Toledo campus in

8

establishing the terms and conditions under which Plaintiff was admitted to and remained in the university's doctoral program.[5]

Next, and more importantly, even the complaint's allegations as to events in Michigan do not identify any relevant conduct or activity *in this judicial district.* Plaintiff refers, for example, to having "learned of" Defendant's allegedly unlawful conduct while "in the State of Michigan," and he notes that he "typically corresponded with professors and administrators via email from" his Michigan residence.  (Plaintiff's Response at 13.)  He also asserts that Defendant violated his privacy rights by disclosing confidential information regarding his doctoral program status "to his employer, Northern Michigan University, located in Michigan."  (Id.)  Yet, nowhere in his complaint or his response to Defendant's motion does he indicate that any of the cited incidents or activities occurred in *this* district, as opposed to the Western District of Michigan.  To the contrary, Plaintiff acknowledges that his employer, Northern Michigan University, is located in Marquette, which lies within the Western District, and that he "could have filed this action in federal court in Marquette."  (Id.)  Assuming that Plaintiff lived somewhere near his place of employment, it seems reasonable to conclude that Plaintiff resided in the Western District when the events of relevance to this case occurred.  At a minimum, nothing in Plaintiff's complaint or subsequent submissions satisfies his burden of establishing the statutory requirement that "a substantial part of the events or omissions

---

[5]In this regard, it is telling that Plaintiff complained to the *Ohio* Civil Rights Commission about Defendant's allegedly discriminatory conduct.

9

giving rise to [his] claim[s]" must have occurred in this district.

In the end, it appears that Plaintiff's theory of venue rests upon the proposition that this Court in southern Michigan is a reasonable and convenient "middle ground" between his residence in northern Michigan and Defendant's campus in northern Ohio. (See Plaintiff's Response at 13.)  The governing venue statute, however, does not permit this sort of "compromise" in ascertaining the districts where a suit may properly be brought. Rather, the statute is explicit in delineating the requirements that must be satisfied in order to commence an action in a particular district, and Plaintiff has failed to demonstrate that these statutory prerequisites have been met in this case.[6]

It remains only to determine the proper remedy for Plaintiff's failure to satisfy the dictates of § 1391(b).  In cases brought "in the wrong division or district," the Court may "dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."  28 U.S.C. § 1406(a).  Here, Defendant acknowledges that this case "could [have] be[en] brought in the United State District Court for the Northern District of Ohio, Western Division, in which the University is

_____

[6]Plaintiff also suggests that it would be "fair" to proceed in this district in light of Defendant's regular contacts with Michigan residents and businesses that lie just on the other side of the nearby Michigan/Ohio border.  Although such considerations of personal jurisdiction are relevant under other subsections of the venue statute, see 28 U.S.C. §§ 1391(a)(3), § 1391(c), they have no bearing upon the venue determination in this case — a determination which, as explained, is controlled by § 1391(b).

10

located." (Defendant's Motion at 8.)[7]  In order to avoid the need for Plaintiff to re-file this action, the Court finds that the case should be transferred to the Northern District of Ohio.[8]

## IV. __CONCLUSION__

For the reasons set forth above,

NOW, THEREFORE, IT IS HEREBY ORDERED that Defendant's January 25, 2006 Motion to Dismiss is GRANTED IN PART, to the extent that Defendant challenges venue in this district.  Defendant's motion is DENIED in all other respects, but without prejudice to Defendant's opportunity to reassert its jurisdictional challenges upon transfer of this case to the Northern District of Ohio.

Gerald E. Rosen
United States District Judge

---

[7]In addressing this issue of proper venue, of course, Defendant is careful to emphasize its broader "deni[al] that there is jurisdiction in any federal court," (id. at 8 n.3), in light of its position that it is immune from suit under the Eleventh Amendment.  As explained earlier, this Court expresses no view as to the merits of this jurisdictional challenge.

[8]Because venue clearly is proper in the Northern District of Ohio, the Court need not address Plaintiff's contention that the case also could have been brought in the Western District of Michigan, Northern Division.  Upon transfer of the case to the Northern District of Ohio, Plaintiff is free to seek a change of venue under 28 U.S.C. § 1404(a).  Again, the Court expresses no view as to the availability or appropriateness of such a transfer.